UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEABODY WESTERN COAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:05CV268 HEA ) |
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, ARIZONA PUBLIC SERVICE COMPANY, NEVADA POWER COMPANY, and TUCSON ELECTRIC POWER COMPANY, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Remand [#21]. Defendants have filed a written response to the motion. Defendants have also filed a Motion to Dismiss for Lack of Personal Jurisdiction [#39], to which Plaintiff has responded. The Court has considered the arguments made in the two motions and their respective responses. For the reasons set forth below, Plaintiff's motion to remand is granted and the matter will be remanded to the St. Louis City Circuit Court.

Therefore, the Court need not address Defendants' motion to dismiss.

## Facts and Background

Plaintiff, Peabody Western Coal Company ("Peabody") brings this suit against Defendants (collectively known as "Defendants") Salt River Project Agricultural Improvement and Power District ("Salt River"), Department of Water and Power of the City of Los Angeles ("the Department"), Arizona Public Service Company ("APSC"), Nevada Power Company ("NPC"), and Tucson Electric Power Company ("TEPC") asserting state law claims for breach of contract, tortious interference, and declaratory judgment relating to coal mining, royalties, and the rights to mine on the reservations of the Navajo Nation and the Hopi Tribe in Arizona.

Plaintiff claims it is a Delaware corporation with its principal place of business in Arizona, while the above-named Defendants are corporations existing under the laws of various states (three of the Defendants, Salt River, APSC, and TEPC, are citizens of Arizona). Defendants removed this case to federal court on February 10, 2005 under 28 U.S.C. § 1332, claiming there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the jurisdictional amount of $75,000.00. Plaintiff alleges Defendants improperly removed the lawsuit and moves for remand to state court.

Defendants argue Peabody is judicially estopped from asserting that its

principal place of business is in Arizona because the company represented in previous litigation that its principal place of business was in Missouri. Defendants assert that even if Peabody is not judicially estopped from asserting its principal place of business is in Arizona, its principal place of business is, in fact, in Missouri.

In addition, Defendants collectively move to dismiss this cause for lack of personal jurisdiction. Defendants claim that they should not have to travel to St. Louis to defend themselves in this Arizona dispute, since prior cases between these parties relating to the Arizona coal mines were properly heard in Arizona, and nothing has changed to now permit Missouri courts to assert personal jurisdiction over any or all of the Defendants.

## **Discussion**

This Court must find complete diversity before it exercises jurisdiction in this case. *Strawbridge v. Curtiss,* 7 U.S. 267 (1806). That is, a court must conclude the plaintiff is from a state that is different from the defendant. *Id.* A defendant may remove a civil action from a state court to a federal court on the basis of diversity jurisdiction only if none of the properly joined defendants are citizens of the state in which the original action was filed. 28 U.S.C. § 1441(b); *Pender v. Bell Asbestos Mines, Ltd.,* 46 F. Supp.2d 937, 939 (E.D. Mo. 1999). A district court lacks diversity jurisdiction over a removed case in which one of the defendants is a citizen of the

forum state. *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145-56 (8th Cir. 1992). If statutory requirements for removal jurisdiction are not met, a district court has no jurisdiction. *Id.* at 1145.

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. *Hatridge v. Aetna Cas. & Sur. Co.,* 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cr. 1997), *cert. denied,* 522 U.S. 1075 (1998); *In re Business Men's Assur. Co. of America,* 992 F.2d 181, 183 (8th Cir. 1993).

Peabody claims it is entitled to remand, because its principal place of business is in Arizona, where it owns and operates mines and where its operations are centered. Peabody admits that its officers and directors are located in Missouri and have been since 1998 when its Flagstaff, Arizona office was destroyed by fire. It claims, however, that for jurisdictional purposes, its principal place of business is in Arizona. Defendant claims that because Peabody has represented it was a Delaware corporation with its principal place of business in Missouri in at least two prior lawsuits, judicial estoppel bars Peabody's current assertion that its principal place of business is in Arizona. Peabody argues that the principles of judicial estoppel cannot

act to expand a federal court's limited jurisdiction. This Court agrees.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (quoting 18 MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity of the judicial process," by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 750 (quoting *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir. 1982) and *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993)). "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* (quoting *Konstantinidis v. Chen,* 626 F.2d 933, 938 (D.C. Cir. 1980) and *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)).

Defendants argue that the doctrine of judicial estoppel prevents Peabody from asserting that its principal place of business is in Arizona, because Peabody has represented in previous litigation that its principal place of business was in Missouri. Defendants may find Peabody's inconsistent representations unsavory, but federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area*

*School District,* 475 U.S. 534 (1986) (citing *Marbury v. Madison,* 5 U.S. 137, 173-180 (1803)). Because federal courts are courts of limited jurisdiction as delineated in Article III and 28 U.S.C. § 1332(a), the doctrine of judicial estoppel does not provide a basis for diversity jurisdiction.

Neither Defendants nor Peabody cite to Eighth Circuit case law which addresses the issue now before the Court. The Court, however, finds particularly persuasive the holding in *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC,* 232 F.3d 79 (2nd Cir. 2000). Faced with facts similar to those here, the *Creaciones,* court held that principles of estoppel do not apply to questions of subject matter jurisdiction. *Id.* at 82 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (holding no action of the parties can confer subject-matter jurisdiction upon a federal court. . . the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings)). The court continued, "[t]he defendant's assertions about its corporate citizenship in unrelated cases therefore could not preclude either the defendant from arguing, or the district court from concluding, that diversity jurisdiction was absent in this case." *Id.* (citing *Wright v. Bankamerica Corp.,* 219 F.3d 79, 90 (2nd Cir. 2000). See also, *Hajek v. Burlington N.R.R. Co.,* 186 F.3d 1105, 1107-08 (9th Cir. 1999) (holding that a party

cannot estop itself into jurisdiction where none exists even where there would be some attractiveness to the notion of an estoppel to expand subject matter jurisdiction). *Creaciones* recognized that a federal court always has an obligation to satisfy itself that it has jurisdiction, regardless of what the parties might assert in that case or what they might have previously asserted in other litigation. Therefore, this Court will not expand its limited jurisdiction based on principles of judicial estoppel.

Because judicial estoppel provides no basis for diversity jurisdiction, the Court must look to Peabody's actual citizenship, specifically its principal place of business, to determine if jurisdiction exists. Courts generally apply one of three tests to determine a corporation's principal place of business. The "nerve center" test considers the location of the control and policy making headquarters to be the principal place of business. *Capitol Indemnity Corp. v. Russellville Steel Co., Inc.*, 367 F.3d 831, 835 (8th Cir. 2004). The "place of operations" test considers a corporation's principal place of business to be the location of the most substantial portion of its production or service activities. Finally, the "total activity" test is a hybrid of the nerve center and place of operations tests, and it recognizes that the nature of a corporation's activities impacts the relative importance of production activities, service activities, and decision making. *Id.*

District courts within the Eighth Circuit have applied the total activity test to

determine a corporation's principal place of business. While the Eighth Circuit has not officially adopted a test for determining a corporation's principal place of business, it has found this test to be "the most appropriate and least limiting of the tests other circuits have applied." *Id.* at 836. In previously applying the total activity test, this Court has held that when no one state is clearly the center of the corporation's activity, or accounts for the majority of the corporation's income, the headquarters and location of the corporate policy-making functions assume greater importance. *Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp.,* 692 F. Supp. 1070 (E.D. Mo. 1988) (citing *Mahoney v. Northwestern Bell Telephone Co.,* 258 F. Supp. 500 (D. Neb. 1966), *aff'd,* 377 F.2d 549 (8th Cir. 1967) (where corporation's headquarters and policy-making functions were in Nebraska, and where no one state accounted for the majority of the corporation's income, Nebraska was the corporation's principal place of business)). "However, when virtually all of the corporate business is conducted in one state, but the headquarters and corporate policy-making functions are conducted in another, the situs of the corporate business assumes greater importance." *Id.* (citing *Hanna Mining Co. v. Minnesota Power & Light Co.,* 573 F. Supp. 1395 (D. Minn. 1983), *aff'd,* 739 F.2d 1368 (8th Cir. 1984) (where corporation conducted all of its business in Minnesota, and where its executive and administrative offices were located in Ohio, Minnesota was the

corporation's principal place of business)).

In addition, Peabody contends the situs of a corporation's business is heightened where the corporation is a mining company. Notably, Peabody cites to *Riggs v. Isl. Creek Coal Co.,* 387 F. Supp. 1363, 1365 (S.D. Ohio 1974) and its companion case, *Riggs v. Isl. Creek Coal Co.,* 371 F. Supp. 287, *rev'd on other grounds,* 542 F.2d 339, 342 (6th Cir. 1976) for the premise that "[a] mining corporation is, for diversity purposes, a citizen of the state where most of its work, land, buildings, inventory, employees, equipment and machinery are located." If the bulk of the mining corporation's operations is divided in some unknown proportion among several states, the corporation's headquarters assumes more significance in determining the principal place of business. *Riggs,* 542 F.2d at 342. On the other hand, if the bulk of the mining operations are shown to be located in one state, it is acceptable to conclude that particular state constitutes the corporation's principal place of business. *Id.* The *Riggs* court applied the "nerve center" test, because the bulk of the mining corporation's activities were divided in an unknown proportion between three states rather than centered in a single state. See also *Nerco Delmar Co. v. North American Silver Co.,* 702 F. Supp. 809, 811 (D. Idaho 1989) (court noted majority of courts have held the principal place of business of a mining corporation is determined by the "place of operations" test since blasting, blending, crushing,

leaching, milling, washing, separating rock from metals, and storing mining products all occurred there).

Here, under the total activity test, Peabody's principal place of business is in the state of Arizona. While the company's officers and directors are located in Missouri, virtually all of its business is conducted in Arizona. Peabody is a party to long-term mining leases with the Navajo Nation and the Hopi Tribe, on whose land it mines coal. Peabody mines more than 12 million tons of coal each year from its mine in Northeastern Arizona, where it is extracted, washed, crushed, and stockpiled. Peabody does not actively mine any coal outside the state of Arizona. Peabody's coal production at the mine is the sole source of coal for Defendants' Navajo Generating Station in Page, Arizona. The mining structures and facilities, including offices, housing, an airstrip, weighing stations, and other buildings are in Arizona, and Peabody does not lease any other property outside of the state that directly supports its mining operations. Finally, Peabody employs more than 600 people at its mining complex in Northeastern Arizona, and no one employed outside the state of Arizona is directly involved in coal production functions.

In applying the total activity test, this Court considers the activities at both Peabody's administrative offices and its place of operations and concludes that while administrative decisions may be made by the company's officers and directors in

Missouri, the majority of the corporate business is conducted in the state of Arizona. Peabody's mining operations are centered in a single state which accounts for the majority of the corporation's income. As such, the headquarters and location of the corporate policy-making functions do not assume greater importance in determining the company's principal place of business, rather, the situs of the business does. Because Arizona is Peabody's principal place of business, complete diversity does not exist with the Arizona Defendants, and this Court lacks subject matter jurisdiction. This matter will be remanded to the St. Louis City Circuit Court, thus, the Court need not address the merits of Defendants' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [#21] is granted;

**IT IS FURTHER ORDERED** that this matter is remanded to the Circuit Court of the City of St. Louis, Missouri.

Dated this 30th day of May, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE